UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-62570-BLOOM/Valle

JOANN BACHEWICZ,

    Plaintiff,

v.

JETSMARTER, INC., DREW DOIDGE,
and JOHN DOES 1-4,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court upon the Verified Motion to Dismiss or Stay and to Compel Arbitration, Pursuant to Contract, filed by Defendants, JetSmarter, Inc. ("JetSmarter") and Drew Doidge ("Doidge") (together, "Defendants"), ECF No. [9] (the "Motion"). In the alternative, Defendants have moved to stay the action pending resolution of ongoing class action arbitration. *Id.* Plaintiff Joann Bachewicz ("Bachewicz") filed a response, ECF No. [18], and Defendants filed a reply, ECF No. [21]. The Court has carefully reviewed the Motion, the parties' supporting and opposing materials, the record in this case and applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

    **I.**    **BACKGROUND**

This case arises out of an alleged breach of a contractual agreement between Plaintiff and JetSmarter. Plaintiff alleges that JetSmarter is a company that provides private air transportation services to its members. ECF No. [1], ¶ 4. After communicating with Doidge, a JetSmarter representative who offered Plaintiff a discounted membership rate, Plaintiff purchased a three-year membership plan at the "Sophisticated" level. *Id.* ¶¶ 7-9. Plaintiff's "Sophisticated" membership

package consisted of three years of benefits such as seats on select flights within three and a half hours, helicopter shuttle services, and discounts on other flights, in exchange for $87,092.72. *Id*. ¶¶ 8-9. Plaintiff alleges that after using JetSmarter services on one occasion, JetSmarter unilaterally changed her membership plan, eliminating many benefits that were previously included. *Id*. ¶¶ 15, 21. Rather than having pre-paid access to select flights as originally promised, Plaintiff alleges that Defendants began to require additional payments for all flights. *Id*. Plaintiff unsuccessfully sought return of the purchase price, and as a result, she filed the Complaint. *Id*. ¶ 16.

The Complaint asserts claims for breach of contract (Count I); violation of good faith and fair dealing (Count II); violation of the Consumer Fraud Act (Count III); respondeat superior (Count IV); and fraud (Count V). In the instant Motion, Defendants request that the Court compel arbitration pursuant to paragraph 18 of the Membership Agreement. *See* ECF No. [9-1] (the "Membership Agreement").

**II. LEGAL STANDARD**

The Federal Arbitration Act embodies "a liberal federal policy favoring arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). So long as a valid arbitration agreement exists, there is a strong presumption in favor of enforcing arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. However, this strong presumption only exists once it is established that the parties did in fact enter into a "'validly formed and enforceable arbitration agreement.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)). Thus, the first factor that must be

addressed is whether a valid agreement exists. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

The party asserting the existence of the contract containing the arbitration agreement "must prove its existence by a preponderance of the evidence." *St. Joe Corp.*, 875 So. 2d at 381. If the Court finds that an enforceable agreement exists and the resisting party fails to raise a genuine issue of fact regarding the existence of such an agreement, the Court then considers whether an arbitrable issue exists. *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018).

### III. DISCUSSION

As a threshold issue, Plaintiff contends that the Court should apply Illinois law to determine whether there is a valid agreement to arbitrate in this case. State law governs when determining whether an enforceable agreement to arbitrate exists. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016). Here, the Membership Agreement contains a choice of law provision specifying that Florida law applies. Nevertheless, Plaintiff asserts that Illinois law should apply because Plaintiff has no connection to Florida, and the Membership Agreement's governing law provision states that Florida law applies to "[t]his Agreement and all the rights of the parties hereunder," and therefore, its application is confined to contractual claims only. As such, Plaintiff argues that because the Complaint raises tort and statutory claims, the choice of law provision should not apply. However, Plaintiff proceeds to cite primarily Florida law on issues where state law is determinative, and concedes that "[o]n the issues requiring determination by the Court at this time . . . the law of the two states is similar[.]" S*ee* ECF No. [18] at 10 n.5. Therefore, Plaintiff appears to concede that the outcome would be the same whether the Court applies Illinois or Florida law. Moreover, as set forth more fully below, the Court does not agree that the

4

Membership Agreement applies only to contractual claims. As such, the Court will apply Florida law.

In Florida, a valid contract requires "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). While there is no requirement that a contract be signed by the parties, "'there must be sufficient proof that the parties actually agreed to arbitrate.'" *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 874 (Fla. 4th DCA 2007) (quoting *Neiman v. Backer*, 167 A.D. 2d 403, 404 (N.Y. App. Div. 1990)).

Defendants seek to compel arbitration pursuant to the Membership Agreement, which is a click-wrap agreement containing an arbitration clause. "In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts." *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006). Plaintiff does not dispute that she was a JetSmarter member, or the existence of a contract with JetSmarter. Rather, she disputes the version of the Membership Agreement to which she agreed, as well as its application to her claims. Plaintiff contends that because various versions of the Membership Agreement have been provided by both Plaintiff and Defendants, it is unclear which is the version to which Plaintiff assented. Plaintiff further maintains that the Membership Agreement that Defendants provide is not the version of the agreement that existed when Plaintiff joined because nothing in it ties Plaintiff to the document. However, each Membership Agreement provided to the Court, not only by Defendants, but by Plaintiff as well attached to the Complaint, contains an arbitration clause, which states, in pertinent part:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration . . . .

5

ECF No. [9-1], § 18; ECF No. [1-4], § 18; ECF No. [1-5], § 20. Furthermore, along with the Membership Agreement, Defendants describe in detail the steps that each potential member must complete on JetSmarter's mobile application before one can become a JetSmarter member. Defendants assert that potential JetSmarter members have access to the Membership Agreement and Terms of Use on JetSmarter's mobile application, and importantly, that they must agree to the terms of the Membership Agreement before becoming a member. Rather than signing a traditional document, this click-wrap agreement is agreed to by toggling an acceptance button. After becoming a member, reservations can be made through the same mobile application where the Membership Agreement and Terms may be viewed. Upon this basis, Defendants have met their burden.

In the verified Motion, Defendants assert that Plaintiff could not become JetSmarter members without clicking through the screen notifying her of JetSmarter's Membership Agreement and Terms of Use, and consenting to be bound by them, including an explicit provision mandating arbitration. Because Plaintiff does not deny the existence of the Membership Agreement, and each version of the Membership Agreement provided to the Court contains a substantively identical arbitration clause, Plaintiff has failed to raise a genuine issue of material fact with respect to the agreement to arbitrate. As such, the Court finds the existence of a valid and enforceable agreement to arbitrate.[1]

Plaintiff further contends that the Court must retain jurisdiction to decide arbitrability. The Court disagrees. "The [Arbitration] Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc.*, 139 S. Ct. at 527. Thus, "[w]hen the parties' contract delegates the arbitrability

---

[1] For the same reasons, the Court rejects Plaintiff's argument that the arbitration provision is void for lack of assent.

question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id*. at 528. Here, the Court has already found that a valid agreement to arbitrate exists. Therefore, the Court looks at the language of the arbitration clause to determine whether issues of arbitrability are reserved for the arbitrator in the first instance.

The arbitration clause in the Membership Agreement states that "[a]ny claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, *including the validity of this clause*, shall be resolved exclusively by binding arbitration . . . ." ECF No. [9-1], § 18 (emphasis added). As a result, the question of arbitrability is for the arbitrator.

Plaintiff also argues that the arbitration clause does not cover her claims, because it only refers to claims, "related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein." As such, Plaintiff maintains that the arbitration clause would apply to contract claims only, relying upon *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999). In *Seifert*, the Florida Supreme Court reasoned that,

> [i]f the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then the dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. Therefore, a contractually-imposed arbitration requirement . . . would not apply to such a claim.

*Seifert*, 750 So. 2d at 640 (internal citations omitted). In the instant case, Plaintiff asserts claims for breach of contract, violation of good faith and fair dealing (a contractual duty), violation of the

7

Illinois Consumer Fraud Act based upon alleged misrepresentations and false promises made by Defendants, fraud based upon alleged misrepresentations and false promises, and respondeat superior. These claims arise from the rights and obligations imposed by the Membership Agreement and alleged misrepresentations and false promises made by Defendants in conjunction with the services rendered by virtue of the Membership Agreement, as opposed to duties generally owed. Therefore, Plaintiff's claims are covered by the arbitration clause and must proceed through arbitration.

Plaintiff maintains further that the arbitration agreement is illusory, and therefore unenforceable, because the Membership Agreement grants JetSmarter the unlimited right to impose changes without notice, and JetSmarter relied on its unilateral authority when it made the changes to the Membership Agreement that form the basis of Plaintiff's claims. First, Plaintiff's assertion ignores the introductory paragraph of the Membership Agreement, which plainly provides for notice, stating:

> JetSmarter may amend or modify this Agreement from time to time. Amendments and modifications to this Agreement will be effective *upon JetSmarter's publication of such amendments or modifications on its website or the JetSmarter mobile application* (the "Application"). Member's continued access or use of the Service or the Application after such posting constitutes Member's consent to be bound by the amended or modified Agreement.

ECF No. [9-1], at 1 (emphasis added). Second, Plaintiff correctly asserts that it is "basic hornbook law that a contract which is not mutually enforceable is an illusory contract," relying on *Pan-Am Tobacco Corp. v. Dep't of Corrs.*, 471 So. 2d 4, 5 (Fla. 1984), yet Plaintiff does not suggest that the arbitration clause itself is not mutually enforceable, lacks sufficient consideration, or contains an illusory provision. *See Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) ("the agreement of a party to submit to arbitration is sufficient consideration to support the other party's

8

agreement to do the same). Furthermore, Plaintiff does not allege that the arbitration clause was unilaterally amended. Plaintiff's claim that the Membership Agreement is illusory does not have the effect of transforming the otherwise valid arbitration agreement into an unenforceable one. *See Vince v. Specialized Servs., Inc.*, No. 8:11-cv-1683-T-24-TBM, 2011 WL 4599824, at *3 (M.D. Fla. Oct. 3, 2011) (rejecting plaintiff's argument that arbitration agreement contained within an employment agreement was unenforceable because defendant retained ability to alter terms of the employment agreement).

Finally, Plaintiff argues that the entire arbitration provision is unconscionable because Defendants maintained the ability to alter the terms of the Membership Agreement, Defendants have "hidden" through a system of multi-linked Terms and Conditions, which were never provided to Plaintiff, Plaintiff had no ability to negotiate the arbitration clause, and the purported waiver of punitive damages contained in the Membership Agreement amounts to an outrageous degree of unfairness to her.

However, Plaintiff's general challenge is unavailing, because it is not specific to the delegation provision, which specifically states that the validity of the arbitration clause is an issue to be determined by the arbitrator. *See Rent-A-Center W., Inc.*, 561 U.S. at 73 ("But we need not consider that claim [referring to the arbitration agreement's procedural and substantive unconscionability] because none of Jackson's substantive unconscionability challenges was specific to the delegation provision."). Consistent with the Supreme Court's instructions, Plaintiff's failure to specifically challenge the delegation provision requires that this Court "treat it as valid under § 2 [of the FAA], and [ ] enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 72; *see also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1149 (11th Cir. 2015) ("[T]he result in this case merely follows the directive

9

set forth in [*Jackson*] and emphasizes that when a would-be plaintiff seeks to challenge an arbitration agreement containing a delegation provision, he or she must challenge the delegation provision directly.").

### IV.     CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss or Stay and to Compel Arbitration, **ECF No. [9]**, is **GRANTED.**

2. The parties shall submit all claims asserted in the Complaint to arbitration in accordance with the Membership Agreement.

3. The Clerk is direct to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 29, 2019.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record